UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

JOSEPH WELLONS,

        Plaintiff,                Case No. 2:23-cv-91

v.                                    Honorable Maarten Vermaat

UNKNOWN BUTLER,

        Defendant.
_____/

## OPINION

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all matters in this action under the jurisdiction of a United States magistrate judge. (ECF No. 5.)

This case is presently before the Court for preliminary review under the Prison Litigation Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C. § 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131, 1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997). Service of the complaint on the named defendant is of particular significance in defining a putative defendant's relationship to the proceedings.

"An individual or entity named as a defendant is not obliged to engage in litigation unless notified of the action, and brought under a court's authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344, 347 (1999). "Service of process, under

longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States magistrate judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that she is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way she is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record does not contain a

consent from the defendants[; h]owever, because they had not been served, they were not parties to th[e] action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. § 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I. Factual allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Kinross Correctional Facility (KCF) in Kincheloe, Chippewa County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues Corrections Officer Unknown Butler.

Plaintiff alleges that on April 6, 2023, Defendant Butler and a trainee were scanning identification cards in the chow hall. The trainee asked Plaintiff to remove his hat while in line.

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States magistrate judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

Plaintiff reports that he removed his hat a few steps after he passed Butler. Nonetheless, Defendant Butler wrote a Class II misconduct report on Plaintiff stating the following:

> While scanning MDOC Id cards in the kitchen[,] prisoner Wellons #151779 goes through chow lines at 1201 hrs. With direct eye to eye contact and about three feet away I gave Wellons a direct order to take off his hat when entering the building. Wellons walks away from the officer's scanning desk saying, "I will take it off when I sit down." I told Wellons that he has to take off his hat now. Wellons replied looking directly at this officer, at about five feet away, saying, "You are a fucking miserable bitch." At no time did Wellons comply with my order in a timely manner. These words were said to this officer intending on harassing and degrading me.

(Misconduct Report, ECF No. 1-1, PageID.18.)[2]

In anticipation of the hearing, Plaintiff offered his own "verified" statement (ECF No. 1-1, PageID.9), and the "verified" statements of two other prisoners: Gaskill (ECF No. 1-1, PageID.10) and Bryant (ECF No. 1-1, PageID.11). Plaintiff reported that Butler did not give Plaintiff a direct order to take his hat off. Indeed, Plaintiff stated that the trainee working with Butler asked Plaintiff to take his hat off and Plaintiff took it off. Plaintiff contended that neither he nor Butler spoke. Plaintiff posited that "C/O Butler is doing this out of retaliation from the (2) two pending grievances [he had] wr[itten] on her . . . [and] she . . . told [him] she would make [his] stay here very uncomfortable since [he] like[d] writing grievance[s] on her." (Statement, ECF No. 1-1,

---

[2] The Court may consider documents that are attached to a *pro se* complaint when considering whether the complaint states a claim upon which relief should be granted. *See, e.g.*, *Powell v. Messary*, 11 F. App'x 389, 390 (6th Cir. 2001) (affirming the Eastern District of Michigan District Court's consideration of the attachments to plaintiff's complaint to determine that the plaintiff had received medical treatment and, therefore, failed to state a claim under the Eighth Amendment); *Hardy v. Sizer*, No. 16-1979, 2018 WL 3244002 (6th Cir. May 23, 2018) (affirming this Court's consideration of the plaintiff's complaint allegations and the documents attached to the complaint to support the determination that the plaintiff failed to state a claim); *Hogan v. Lucas*, No. 20-4260, 2022 WL 2118213, at *3 n.2 (6th Cir. May 20, 2022) (stating that "[b]ecause the documents attached to Hogan's complaint are referenced in the complaint and 'central to the claims contained therein,' they were properly considered at the § 1915(e)(2) screening stage." (citations omitted)). The Court will generally accept as true the statements that Plaintiff makes in the documents he has attached to the complaint. The Court will generally not accept as true statements made by others in the documents Plaintiff attaches to the complaint.

PageID.9.) Finally, Plaintiff acknowledged that some exchange regarding a hat had occurred that lunch period between Butler and another inmate—but it was not him. (*See id.*) Prisoner Gaskill echoed Plaintiff's claim that what Butler described had, in fact, occurred, but that it was not between Butler and Plaintiff; instead, it was between another inmate and Plaintiff. (ECF No. 1-1, PageID.10.) Prisoner Bryant supported Plaintiff's claim that Butler and Plaintiff had not spoken to each other. (ECF No. 1-1, PageID.11.)

Lieutenant MacArthur served as the hearing officer at the April 11, 2023, misconduct hearing. He described the evidence, his findings, and the supporting reasoning as follows:

> Prisoner Wellons is present for this hearing and pleads not guilty to the charges Disobeying a Direct Order and Insolence. Prisoner Wellons states that he never had a conversation with C/O Butler and that it was a different prisoner who became insolent and received a direct order from C/O Butler. Prisoner Wellons states that he never had a conversation with C/O Butler and that he was told by the other C/O to remove his hat and he did. Prisoner Wellons states that it is an ongoing issue with C/O Butler and he believes it[']s because he has put a grievance on her and requested that she undergo[] a 51/50 psychological evalu[]ation because of all the extra work hours she had been putting in. Prisoner Wellons requests video footage to be reviewed to verify his statement.
>
> \*   \*   \*
>
> Prisoner Wellons has been afforded all rights to due process. KCF Institutional cameras were reviewed for the date and time this misconduct was authored. Prisoner Wellons is observed entering the chow hall (wearing a brown jacket and state issued orange hat), he turns and faces toward the officer station and has his ID scanned by C/O Butler. Prisoner Wellons continues to walk in the chow hall line still wearing the orange hat. Prisoner Wellons turns and faces C/O Butler approximately 5 to 6 feet away from the officer station and then removes his state issued orange hat. Prisoner Wellons was asked what he was wearing in the chow hall on the date and time this misconduct was written and he state, "I had on a brown jacket and an orange hat." KCF Institutional camera footage verify that it was prisoner Wellons in the chow line at the time of the violation. COMs Meal history report for prisoner Wellons was searched and it shows that prisoner Wellons scan his MDOC ID card at 1201 hours. The violation date and time matches prisoner Wellons COMs Meal history. I find C/O Butler[']s misconduct to be truthful and the video footage matches the body of the misconduct. I find prisoner Wellons guilty to the charges Disobeying a Direct Order and Insolence.

5

(Misconduct Hr'g Report, ECF No. 1-1, PageID.19.) Plaintiff appealed Lieutenant MacArthur's decision, to no avail. (Misconduct Appeal, ECF No. 1-1, PageID.20.)

Plaintiff also attaches to his complaint the grievances that purportedly motivated Defendant Butler's retaliation. The underlying facts are quite similar to the facts underlying Plaintiff's misconduct. The "first-in-time" grievance, KCF 2301 33 17Z, describes a situation in the chow hall on January 12, 2023:

> On 1/12/23, I entered Food Service at approx. 12:51 p.m. and approx 12:53 p.m. I was approached by C/O Butler requesting that I remove my hat. At this time, I was in the process of cleaning the "Fog" off my eye glasses whereas I could see. I told Ms. Butler as soon as I done cleaning my glasses I would remove my hat. C/O Butler became upset and started being disrespectful toward me violating P.D. 03.03.130(I). I'm entitled to be free from mental and/or physical abuse as outlined in Humane Treatment and Living Condition For Prisoners). I take it as I did not remove my hat quickly enough, so I became a victim of inappropriate verbal abuse by C/O Butler. I recommend that this officer undego a 51/50 Psychological Evaluation with time off to rest from working a great number of overtime hour's the last couple of month's. This is a health and safety issue that affects her and her coworker's, and it need to be addressed; I would also recommend that C/O Butler receive some training and/or counseling on how to communicate with prisoners treating them with dignity and respect. The lack of communication skills of being rude and disrespectful her-0self and coworker in dangerous situations.

(ECF No. 1-1, PageID.14 (errors in original).) The second grievance, KCF 2302 62 28A, is similar:

> At or around 13:22 hr.'s, On 1/29/23, I entered Food Service to get my I.D. Card scanned. I had taken my eye glasses off due to the cold had them fogged up. I looked up and C/O Butler said to me "what are you staring at?! Do you have a problem with me?!" C/O Butler was agitated, angry, aggressive, and upset. I looked up after putting my glasses on and realized that C/O Butler was talking to me. The other two(2) prisoner's(whose name's will be disclosed later in fear of retaliation) was wondering if Butler was talking to them at first, and will witness incident.
>
> I wrote a grievance on C/O Butler requesting that she get time off for Psychological reasons (grievance i.d. #2301 33 17Z). C/O Butler is retaliating against me by trying to start an incident with me due to the above quoted grievance that I wrote on her.
>
> C/O Butler's conduct violates PD 03.02.130(L); PD 03.03.130(I)(6) for retaliation. Also see PD 01.04.110, PD 02.03.107 and PD 02.03. 109.

6

> C/O Butler needs time off and additional training in dealing with me as a prisoner who deserve respect. Staff corruption falls in the jurisdiction of Internal Affairs as outlined in PD 01.01.140.

(ECF No. 1-1, PageID.12 (errors in original).) The second grievance was rejected because it was deemed to be duplicative of the first. (*See id*., PageID.13.)

Plaintiff's allegations are a bit elusive with regard to how far he took the grievance procedure. He offers no information regarding the first grievance and only chronicles the first two steps with regard to his second grievance.

Plaintiff claims that Defendant Butler's misconduct report was false and that it was issued in retaliation for Plaintiff's filing of two grievances, in violation of Plaintiff's First Amendment rights. He seeks a declaratory judgment to that effect, compensatory damages of $100,000.00, and punitive damages in the amount of $300,000.00. (Compl., ECF No. 1, PageID.4.)

**II.    Failure to state a claim**

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 679. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because § 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994). Plaintiff claims that Defendant Butler's writing of an allegedly false misconduct report in retaliation for Plaintiff's filing of grievances violated his First Amendment rights.

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution. *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish three elements: (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct. *Id.* Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

8

The filing of a nonfrivolous prison grievance is constitutionally protected conduct for which a prisoner cannot be subjected to retaliation. *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001); *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000). The right to file grievances is protected only insofar as the grievances are not "frivolous." *Herron*, 203 F.3d at 415. "Abusive or manipulative use of a grievance system would not be protected conduct," *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012), and an "inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory," *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002).

The Sixth Circuit considered the distinction between frivolous and nonfrivolous grievances in *Maben v. Thelen*, 887 F.3d 252 (6th Cir. 2018):

> Some cases in this Circuit appear to suggest that a prisoner's grievance is frivolous when the underlying grievance itself is *de minimis*. *Ziegler v. State of Michigan*, 90 F. App'x 808, 810 (6th Cir. 2004) (finding a grievance frivolous when the prisoner complained that the prison officer should "not be able to conduct a non-invasive pat-down search" of her); *White-Bey v. Griggs*, 43 F. App'x 792, 794 (6th Cir. 2002) (finding grievances that "concerned being required to use a typewriter rather than a computer, and being required to sit quietly in defendant's office after being told again that there was no computer available for him to use" to be frivolous and not to "rise to the level of protected conduct"); *Scott v. Kilchermann*, 230 F.3d 1359, at *1–2 (6th Cir. 2000) (finding a grievance frivolous when the inmate complained that he had been subject to verbal abuse); *Thaddeus–X v. Love*, 215 F.3d 1327, at *2–3 (6th Cir. 2000) (finding a prisoner's threat to file a grievance against an officer for "eating waffles at a prison guard desk," which was against prison policy, "patently frivolous as the defendant's conduct had no adverse impact on [the prisoner]").

*Maben*, 887 F.3d at 264–65. The *Maben* court distinguished those examples from "legitimate" grievances. *Id*. at 265.

The line between frivolous *de minimis* grievances and legitimate grievances might not be the brightest line, but it is clear that the commonplace exchanges between Plaintiff and Defendant Butler on January 12 and 29 fall on the *de minimis* side. On January 12, after Plaintiff declined to

9

promptly remove his hat, Plaintiff alleges in a conclusory manner that Defendant Butler "became upset and started being disrespectful . . . ." (ECF No. 1-1, PageID.14.) Plaintiff does not provide any further facts about Defendant Butler's specific statements to Plaintiff. Instead, Plaintiff conclusorily conflates Butler's alleged upset and disrespect with inhumane treatment. But he does not provide any facts in the grievance or the complaint to support those conclusions. Plaintiff provides more detail with regard to the exchange on January 29. On that date, Butler asked Plaintiff "what are you staring at" and "do you have a problem with me?" (ECF No. 1-1, PageID.12.) According to Plaintiff, the questions evidenced agitation, anger, aggression, and upset. (*See id.*) But they were only questions. Plaintiff does not offer any other facts to support his claim that the questions were inhumane treatment. Plaintiff's scant descriptions render his suggestion that Butler required psychological examination hyperbolic and extreme.

In short, Plaintiff has failed to allege any facts that support an inference that his grievances were nonfrivolous. Instead, based on Plaintiff's allegations, it appears he was making mountains out of molehills. The Court concludes that Plaintiff has failed to state a claim for First Amendment retaliation because he has failed to allege facts showing that he engaged in protected conduct.

## Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). Although the Court concludes that Plaintiff's claim is properly dismissed, the Court does not conclude that any issue Plaintiff might raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962). Accordingly, the Court does not certify that an appeal would not be taken in good faith. Should

Plaintiff appeal this decision, the Court will assess the $505.00 appellate filing fee pursuant to § 1915(b)(1), *see McGore*, 114 F.3d at 610–11, unless Plaintiff is barred from proceeding *in forma pauperis*, *e.g.*, by the "three-strikes" rule of § 1915(g). If he is barred, he will be required to pay the $505.00 appellate filing fee in one lump sum.

    This is a dismissal as described by 28 U.S.C. § 1915(g).

    A judgment consistent with this opinion will be entered.

Dated: June 7, 2023                                             /s/ *Maarten Vermaat*
                                                                           Maarten Vermaat
                                                                           United States Magistrate Judge